# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT KNOXVILLE
## March 27, 2012 Session

## STATE OF TENNESSEE v. KEVIN ANTHONY GRAHAM

### Appeal from the Criminal Court for Hawkins County
### No. 10-CR-189     John F. Dugger, Jr., Judge

### No. E2011-01382-CCA-R3-CD - Filed August 22, 2012

The Defendant-Appellant, Kevin Anthony Graham, entered a guilty plea in the Hawkins County Criminal Court to the charged offense of theft of property valued at $10,000 or more but less than $60,000, a Class C felony, and requested that the trial court grant him judicial diversion or an alternative sentence. At that time, the State informed the court that the parties agreed Graham would be sentenced as a Range I, standard offender to a sentence of three years with the manner of service of the sentence to be determined by the court, in the event that the court denied judicial diversion. Graham was subsequently sentenced to three years' incarceration. On appeal, Graham contends that the trial court erred in denying: (1) judicial diversion and (2) an alternative sentence. Upon review, we conclude that the trial court erred in denying a sentence of split confinement. Although the trial court properly denied judicial diversion, full probation, and a community corrections sentence, we reverse the judgment and remand the case with instructions to the trial court to enter an order sentencing Graham to serve 90 days' confinement in the Hawkins County Jail before serving the remainder of his three-year sentence on supervised probation.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court
### Reversed and Remanded

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Richard A. Spivey, Kingsport, Tennessee, for the Defendant-Appellant, Kevin Anthony Graham.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy E. Wilber, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Alex Pearson, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

**Plea Submission and Sentencing Hearing.** Prior to entry of his guilty plea, Graham requested pretrial diversion, which was denied. On June 13, 2011, he entered a guilty plea to theft of property valued at $10,000 or more but less than $60,000. The State conceded that restitution in the amount of $14,868.91 had been paid by Graham's family. In addition, the State noted that Graham's mother, the retired Clerk and Master for the Hawkins County Chancery Court, paid $10,062 for the cost of the audit related to the theft. The State also submitted a report, without objection from the defense, summarizing the facts supporting Graham's guilty plea. This report provided the following, in pertinent part:

> The [C]lerk and [M]aster notified us on September 23, 2009, that she had discovered discrepancies involving a delinquent property tax transaction. After we reviewed the transaction in question and performed extended audit procedures for the period July 1, 2008[,] though September 24, 2009, we determined that a cash shortage of $14,868.91 existed in the Office of Clerk and Master as of September 24, 2009. This shortage resulted from the apparent misappropriation of cash collections and improper entries made to official records to conceal the theft.

> Employees of the office properly issued computer generated receipts for delinquent property tax collections. However, the chief deputy, Mr. Kevin Graham, subsequently posted entries to the computer system improperly voiding 19 receipts that had been paid in cash, concealing the theft of the cash. Mr. Graham later made entries to the tax rolls to reflect that most of these properties had paid their taxes. He also forwarded reports to the Office of Trustee reflecting that the taxes had been paid on these properties to prevent future delinquency notices from being sent to taxpayers by the trustee.

At the sentencing hearing, Graham testified on his own behalf. He stated he had worked for the Hawkins County Chancery Court for twenty-four years while his mother was the Clerk and Master for that court. Graham admitted that he had taken $14,868.91 in tax receipts and converted them to his own use. He also admitted that he had made false entries in the computer system in order to conceal his theft. Graham acknowledged that his family had paid the restitution in full. He also acknowledged that his mother had written a check in the amount of $10,062.00 to cover the costs of the audit. A copy of this check was admitted as an exhibit.

Graham said he stole the money from the tax receipts because "it was hard" covering the expenses for his wife and four children and he was "too ashamed to go to [his] parents" for financial help. He stated that he intended to repay the money but that the audit uncovered his theft before he could replace the funds. Graham said he had never stolen anything prior to this offense.

Graham stated he had been married for seventeen years and had four children who were between the ages of six and fifteen years. He said his marriage was stable and his wife had supported him during this difficult period. Graham said he was "[d]eeply remorseful" for his actions. He also said he worked as a referee for church league basketball games and basketball tournaments during the pendency of this case to earn money for his family. He acknowledged that he had built a career as a deputy clerk in Hawkins County and had lost this career because of his theft. Graham requested that the trial court grant him judicial diversion so that he could "get back [to] working and supporting [his] family." He acknowledged that having a felony conviction on his record would make finding a job much more difficult. Graham's criminal history, which included two speeding tickets in 2005 and 2008 and one seatbelt violation in 2009, was entered as an exhibit.

Graham said he earned two diplomas from the Tennessee Technology Center at Morristown following his theft. These diplomas, which were admitted as exhibits, showed that he had earned degrees in the areas of accounting assistant and administrative assistant and had a 4.0 grade point average.

Graham said he discussed his crime with his minister and his friends and had never denied that he committed the offense in this case. The defense submitted six letters from individuals who supported Graham's request for judicial diversion or an alternative sentence.

Jefferson Fairchild, an attorney in Hawkins County, testified that he had known Graham his entire life and that they were close friends. Fairchild said he "looked up" to Graham as they were growing up and stated that Graham had "kept [him] out of trouble on many occasions" during their youth. He said Graham regularly attended church and was an excellent husband and father. He also asserted that Graham's theft was "a hundred and eighty degrees different" from the individual he "knew and grew up with [sic]." Fairchild stated that Graham was genuinely remorseful for his actions and that this case had been "traumatic" to Graham and his family.

Brice Lackey, the Rogersville Parks and Recreation Director, testified that he had known Graham for more than thirty years and that they were good friends. Lackey said Graham had coached T-ball and basketball and frequently helped him by volunteering for activities associated with the Rogersville Parks. He said he had always been able to depend

on Graham and continued to be able to depend on him. Lackey stated that Graham had admitted to him that he had stolen the money from the clerk's office and had "[a]bsolutely" showed remorse for his actions. Lackey recommended Graham for judicial diversion and believed that Graham would follow any requirements set by the court.

Catherine Combs, an instructor at the Tennessee Technology Center, testified that she had taught Graham over the past two years. She described Graham as "an excellent student," who was "always willing to do more than [she] asked[] and also helped other students [who were] struggling." Combs said Graham began taking classes at the Tennessee Technology Center after he committed the offense in this case. When he applied for admission to this school, Graham told Combs "the whole story" regarding his theft and expressed remorse for his actions.

Thomas Willis, the senior pastor at First Baptist Church in Rogersville, testified that Graham had attended this church his entire life. He said he had counseled Graham for the past year and a half. During these counseling sessions, Graham had been very open about his mistake and had expressed remorse for his actions. Reverend Willis stated that Graham continued to attend church after he was charged with this offense and had "the support of his family and the support of the church[.]"

Michelle Graham, the Defendant-Appellant's wife, testified that Graham was an excellent father and husband and that their marriage was stable. She said Graham was very sorry for his actions. She also said Graham had tried to support his family during this difficult time.

At the conclusion of the hearing, the trial court said it did not take its decision regarding judicial diversion "lightly" and described the case as "a serious matter." The court first determined that Graham was amenable to correction because he had a positive attitude, a supportive family, and expressed remorse for his actions. It noted that Graham had no criminal history and found that Graham had a positive social history and good mental and physical health. The court stated:

> [Graham's s]ocial history is good and that's something that's going to aid him in his future. This is not the end of the world for Mr. Graham. Mr. Graham will do fine in the future[,] but he's got to be punished. If he's not punished, the people in Hawkins County, there will be a lot of them [who] will say, [O]h, yeah, he's good, that's what he deserved. But there's a big majority of the people that come through this Court[,] and I'm handling over two thousand cases a year and a lot of thefts, how can I put anybody in jail for a theft of a thousand dollars or five hundred dollars or whatever and then they think, Well,

you know, I got what I deserved and then Mr. Graham[, who is] connected to the courthouse and the courts, [who stole] fourteen thousand dollars[] doesn't go to jail. I couldn't do it. There would be no respect for the judicial system. And this is a tough decision for the Court.

The trial court said that the circumstances of this offense "concern[ed it] greatly." It noted that the theft occurred over a period of nearly a year, from July 1, 2008, to June 30, 2009, which had given Graham time to reflect on his actions. It further asserted that Graham was "under an oath, under a duty, to be honest" and to conduct himself with "u[t]most honesty in the county." The court stated that Graham could have taken on a second job at night or on the weekends instead of stealing this money. The court also noted that Graham's family had repaid the money Graham stole and that Graham's mother, the former Clerk and Master, had repaid the cost associated with the audit. The court expressed its concern about Graham's offense, stating: "[T]he people of Hawkins County have to have the belief that the courthouse and the justice system are places where people that work in those facilities are honest and that they can trust what goes on in these buildings."

The trial court also said that Graham had worked for his mother in the clerk's office for the last twenty-four years and that everyone "thought [he] did a great job." However, it asserted that Graham's theft gave all of his mother's "good years of service a black eye amongst the public." The court also asserted that Graham "had a duty to be the most honest person in the courthouse, and he breached that duty. He breached the public trust." The court added, "[T]he poor man, the working man out here that's not connected to the courthouse that get[s] charged with a theft, if [he] go[es] to jail, [he will] say: I'm not connected, I don't have connections in the courthouse, . . . I go to the jail [but] if you've got connections, you don't." The court cited State v. Lane, 56 S.W.3d 20, 26-27 (Tenn. Crim. App. 2000), for the proposition that diversion may be denied for officials who violate the public trust during the course of their employment. The court found that the circumstances of this particular offense weighed against granting Graham judicial diversion.

The trial court then considered the deterrence value to Graham as well as to other individuals. The court said "clerks that handle thousands and thousands of dollars" need to be deterred from taking funds from "poor people" who have "scraped up their [money] to pay their court costs[.]" The court opined that anyone working in the courthouse or justice center needed to be aware that "if they steal, they've got to know they're going to be held to a higher standard because of the public trust that's put in [them]."

The trial court also considered whether judicial diversion would serve the interests of the public and the defendant. The court found that judicial diversion would not serve the

public's interests because the public put their trust in individuals working in the courts. Regarding whether judicial diversion would serve Graham's interest, the court stated:

> [Judicial diversion] might serve the accused in some ways and then in other ways it [would not], because if [Graham] steals fourteen thousand dollars working in the courthouse and doesn't [have to serve] a day in jail and is out here living in Hawkins County [for] the rest of his life, people are going to say, Well, he got out of that, instead of going [to prison] and putting in his time and getting out and holding his head up and saying, I [paid] my debt to society, I did my time . . . . [Instead, people will say that his mother] paid the restitution, [his mother] paid the audit fee, [his mother] got [him] out of it, [he] didn't have to serve a day.

The court also determined that a sentence of confinement would "serve [Graham]" because he would "know that he got punished for what he did. He took responsibility."

Ultimately, the trial court concluded that it would not grant diversion in this case. The court said that this was a "tough decision" because Graham was a "good guy" but that the more important issue was the "integrity of the judicial system" and "the integrity of public service." Defense counsel then asked the trial court to make findings on his request for probation or alternative sentencing, and the court responded that it had already "gone through all those [factors for consideration]." Defense counsel then argued that the mitigating factors, which were that the offense did not involve serious bodily injury, that restitution was made, and that Graham had no prior criminal history, had an excellent social history and work history, and had rehabilitated himself, outweighed the single enhancement factor that Graham abused his position of public trust. The court responded that it gave "[e]xtreme weight" to Graham's abuse of his position of public trust. The court added that Graham could not be treated like everyone else because he was "held to a higher standard [as] a public servant handling funds for the courts[.]"

At the request of defense counsel, the court stated that it applied the mitigating factors that Graham's conduct neither caused nor threatened serious bodily injury and that Graham had a positive social and employment history. See T.C.A. § 40-35-113(1), (13) (2006). It also stated that the mitigating factor that Graham's conduct was motivated by his desire to provide necessities for his family "[p]robably" applied. See id. § 40-35-113(7). The court also applied the enhancement factors that the amount of property stolen was particularly great and that Graham had abused a position of public trust. See id. § 40-35-114(6), (14) (2006). The court said that the weight it gave to the enhancement factor that Graham abused of a position of public trust was so great that "it outweigh[ed] the mitigating factors."

The defense next asked the court to consider giving Graham a community corrections sentence. The court acknowledged that the offense was not a crime of violence but asserted that Graham committed the offense "over a long period of time" and abused his position of public trust. The trial court reiterated that it was denying judicial diversion and all forms of alternative sentencing and was imposing a three-year sentence of confinement. Graham subsequently filed a timely notice of appeal.

**ANALYSIS**

**Denial of Judicial Diversion.** Graham argues that the trial court abused its discretion in denying his request for judicial diversion. In response, the State contends that there was substantial evidence to support the trial court's denial of judicial diversion. Moreover, the State argues that the trial court considered all of the required factors for judicial diversion and gave "extreme weight" to Graham's abuse of a position of public trust. We agree with the State.

Tennessee Code Annotated section 40-35-313 outlines the requirements for judicial diversion. After a qualified defendant is either found guilty or pleads guilty, a trial court has the discretion to defer further proceedings and place that defendant on probation without entering a judgment of guilt. Id. § 40-35-313(a)(1)(A) (2006). A qualified defendant is defined as a defendant who pleads guilty to or is found guilty of a misdemeanor or a Class C, D, or E felony; is not seeking diversion for a sexual offense or a Class A or Class B felony; and does not have a prior conviction for a felony or a Class A misdemeanor. Id. § 40-35-313(a)(1)(B)(i). Upon the qualified defendant completing a period of probation, the trial court is required to dismiss the proceedings against him. Id. § 40-35-313(a)(2) (2006). The qualified defendant may then request that the trial court expunge the records from the criminal proceedings. Id. § 40-35-313(b) (2006).

Judicial diversion is not a sentencing alternative for convicted defendants. Id. § 40-35-104(c) (2006). Whether to grant or deny a request for judicial diversion lies within the trial court's sound discretion. State v. Harris, 953 S.W.2d 701, 705 (Tenn. Crim. App. 1996) (citing State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000)). Accordingly, the trial court's decision regarding diversion will not be disturbed on appeal absent an abuse of discretion. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983)). This court will conclude that the trial court did not abuse its discretion if the record contains "'any substantial evidence to support the refusal.'" State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992) (quoting Hammersley, 650 S.W.2d at 356).

The trial court must consider the following factors in deciding whether a qualified defendant should be granted judicial diversion: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the interests of the public as well as the defendant. Electroplating, Inc., 990 S.W.2d at 229; see State v. Cutshaw, 967 S.W.2d 332, 343-44 (Tenn. Crim. App. 1997); Bonestel, 871 S.W.2d at 168. The trial court may consider the following additional factors: "'[the defendant's] attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement.'" State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (quoting State v. Markham, 755 S.W.2d 850, 852-53 (Tenn. Crim. App. 1988) (citations omitted)). The trial court must weigh all of the required factors in determining whether to grant judicial diversion. Electroplating, Inc., 990 S.W.2d at 229 (citing Bonestel, 871 S.W.2d at 168). Finally, "a trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." Cutshaw, 967 S.W.2d at 344 (citing Bonestel, 871 S.W.2d at 168).

First, Graham argues that the trial court relied on the "inappropriate and irrelevant factor" that his family paid the restitution and the cost related to the audit. He contends that the trial court should not have considered this financial assistance as a negative factor and that "[a] supportive family is usually [considered] a positive factor." In addition, he argues that the trial court improperly entangled the source of the restitution funds with the enhancement factor that he had abused a position of public trust.

The record shows that the trial court mentioned the payment of restitution and audit fees by Graham's family within the context of determining whether judicial diversion would serve the interests of both the public and the defendant, which is a proper factor for the trial court's consideration. The court emphasized that a grant of judicial diversion might not serve Graham's interests if the public perception was that he avoided a just punishment because of his family's money and influence within the court system. We conclude that the trial court's comments regarding restitution within this context were not error. We further conclude that the court did not improperly entangle the source of the restitution funds with the enhancement factor that Graham abused a position of public trust.

Graham also argues that the court, in denying judicial diversion, placed too much weight on the enhancement factor that he abused a position of public trust and placed too little weight on the statutory and non-statutory mitigating factors applicable in this case. This argument is misplaced since judicial diversion is not an alternative sentence and the trial

-8-

court must consider the aforementioned outlined factors when determining whether to grant judicial diversion. See T.C.A. § 40-35-104(c); Electroplating, Inc., 990 S.W.2d at 229. Although enhancement and mitigating factors are relevant to determine the length of a sentence and the sentence alternative, these factors are not relevant to the determination of judicial diversion unless the enhancement and mitigating factors directly correspond to the specified factors for judicial diversion. See Electroplating, Inc., 990 S.W.2d at 229; Washington, 866 S.W.2d at 951. To the extent that the enhancement and mitigating factors relevant to this case correspond to the judicial diversion factors, we conclude that the trial court did not err in its weighing of these factors.

In addition, Graham argues that the trial court inappropriately considered the need for deterrence, in the absence of a factual basis showing that deterrence was necessary for this type of offense, and the need for punishment, given that this is not one of the required factors for judicial diversion. Despite Graham's argument to the contrary, the deterrence value to the defendant and others is a proper factor for consideration in determining whether to grant judicial diversion. See Electroplating, Inc., 990 S.W.2d at 229. Moreover, the record shows that the trial court's comments regarding punishment were made in the context of its consideration of the deterrence value to Graham and others. See id. Specifically, the court stated that "clerks that handle thousands and thousands of dollars" need to be deterred from taking funds from "poor people" who have "scraped up their [money] to pay their court costs" and that anyone working in the courthouse or justice center needed to be aware that "if they steal, they've got to know they're going to be held to a higher standard because of the public trust that's put in [them]." We conclude that the trial court did not err in its consideration of these factors.

Finally, Graham contends that his own interests as well as the interests of society would be best served by a grant of judicial diversion. We disagree. We conclude that the public has a vested interest in seeing that individuals who commit serious offenses affecting the integrity of the judicial system, like the offense in this case, are punished in a just and meaningful way. Accordingly, a grant of judicial diversion in this case would not serve the public's interests. Moreover, because the record shows that there was substantial evidence to support the trial court's refusal to grant judicial diversion, Graham is not entitled to relief on this issue. See Anderson, 857 S.W.2d at 572 (quoting Hammersley, 650 S.W.2d at 356).

Here, the trial court determined that the following factors favored judicial diversion: Graham was amenable to correction, had no criminal record, had a good social history, and had good physical and mental health. However, the court found that the following factors disfavored judicial diversion: the circumstances of the offense, including Graham's abuse of a position of public trust; the need to deter Graham and others from committing similar offenses; and the fact that judicial diversion would not serve the interests of the public or the

defendant. The trial court gave "[e]xtreme weight" to Graham's abuse of a position of public trust based on the circumstances of the offense and found that this factor "outweigh[ed]" the factors favoring judicial diversion. This court has previously held that a denial of judicial diversion is proper where, as here, the defendant violated a position of public trust. See State v. Donna F. Benson, No. W2001-01926-CCA-R3-CD, 2002 WL 31296110, at *6 (Tenn. Crim. App., at Jackson, Oct. 8, 2002) (holding that a denial of judicial diversion was proper based on the circumstances of the offense and the best interests of the public where the defendant, a former employee of the Shelby County Criminal Court Clerk's office, accepted two bribes during the course of her employment, constituting an "egregious violation" of her position of public trust); State v. Charles Chesteen, No. E1999-00910-CCA-R3-CD, 2000 WL 739458, at *14 (Tenn. Crim. App., at Knoxville, Jun. 8, 2000) (holding that "[w]hen the circumstances of the offense [which involved a clerk and master of a chancery court withholding funds from people for whom he was serving as financial conservator and misappropriating funds, over $100,000, held by the chancery court] are considered in connection with the interests of the public in seeing meaningful punishment meted out for a crime involving large sums of money taken in the manner as was done here, it is clear that the public's interests are not served by judicial diversion in this case"). The record shows that the court weighed each of the required factors. See Electroplating, Inc., 990 S.W.2d at 229 (citing Bonestel, 871 S.W.2d at 168). The record also shows that the court not only provided its reasoning for denying judicial diversion but also explained why the circumstances of the offense, including Graham's abuse of a position of public trust, outweighed the factors favoring judicial diversion. See Cutshaw, 967 S.W.2d at 344 (citing Bonestel, 871 S.W.2d at 168); see also Washington, 866 S.W.2d at 951 (concluding that the circumstances of the offense or the need for deterrence "cannot be given controlling weight unless they are 'of such overwhelming significance that they [necessarily] outweigh all other factors.'" (quoting Markham, 755 S.W.2d at 853) (referring to factors for pretrial diversion)); Anderson, 857 S.W.2d at 572 (holding that "judicial diversion is similar in purpose to pretrial diversion and is to be imposed within the discretion of the trial court subject only to the same constraints applicable to prosecutors in applying pretrial diversion under [Tennessee Code Annotated] § 40-15-105"). After reviewing the record, we conclude that the trial court did not abuse its discretion in denying judicial diversion in this case.

**Denial of Alternative Sentencing.** Graham also argues that the trial court erred in denying him an alternative sentence, full probation, or a community corrections sentence. He asserts that his sentence was not imposed in accordance with the sentencing act and that his sentence was excessive. In response, the State contends that the trial court properly denied alternative sentencing on the basis that the circumstances of the offense and Graham's abuse of a position of public trust outweighed the mitigating factors in this case. Moreover, the State argues that the trial court implicitly found that confinement was necessary to avoid depreciating the seriousness of the offense in this case. We conclude that the trial court erred in denying a sentence of split confinement.

This case is governed by the 2005 amended sentencing act because this offense occurred after the amended act's effective date of June 7, 2005. See T.C.A. § 40-35-210 (2006), Compiler's Notes. Under this act, "the trial court 'shall consider, but is not bound by' an 'advisory sentencing guideline' that suggests an adjustment to the defendant's sentence upon the presence or absence of mitigating and enhancement factors." State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008) (quoting T.C.A. § 40-35-210(c) (2006)). Moreover, under the amended act "[a]n appellate court is . . . bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346. The Tennessee Supreme Court emphasized the broad discretion the trial court has in sentencing a defendant under this act:

> [A] trial court's weighing of various mitigating and enhancement factors has been left to the trial court's sound discretion. Since the Sentencing Act has been revised to render these factors merely advisory, that discretion has been broadened. Thus, even if a trial court recognizes and enunciates several applicable enhancement factors, it does not abuse its discretion if it does not increase the sentence beyond the minimum on the basis of those factors. Similarly, if the trial court recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors. The appellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence.

Id. at 345-46.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court "may not disturb the sentence even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, in a case where "the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." Carter, 254 S.W.3d at 345 (citing State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). Because the trial court improperly applied the enhancement factor that the amount of property stolen was particularly great and failed to follow the sentencing principles as set out in Tennessee Code Annotated sections 40-35-102 and 40-35-103 (2006),

our review is de novo without a presumption of correctness. See id. at 345-46; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A trial court, when sentencing a defendant, must consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2006); see Carter, 254 S.W.3d at 343; State v. Hayes, 337 S.W.3d 235, 264 (Tenn. Crim. App. 2010). The defendant has the burden of showing the impropriety of the sentence. Id. § 40-35-401(d), Sentencing Comm'n Comments.

We note that the trial court failed to consider the purposes of the amended sentencing act as outlined in Tennessee Code Annotated section 40-35-102. Specifically, the court failed to consider that "[e]very defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense[.]" Id. § 40-35-102(1). In addition, the court failed to "encourag[e] effective rehabilitation of . . . defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants[.]" Id. § 40-35-102(3)(C). Moreover, the trial court's comments regarding the payment of restitution by Graham's family arguably show its failure to consider the principle that "[s]entencing should exclude all considerations respecting . . . social status of the individual." Id. § 40-35-102(4). Finally, the trial court failed to recognize that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]" Id. § 40-35-102(5).

The trial court also failed to follow the sentencing considerations set out in Tennessee Code Annotated section 40-35-103. Specifically, the court failed to consider the following:

> (2) The sentence imposed should be no greater than that deserved for the offense committed;
>
> (3) Inequalities in sentences that are unrelated to a purpose of this chapter should be avoided;
>
> (4) The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed;
>
> (5) The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. The length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence; and
>
> (6) Trial judges are encouraged to use alternatives to incarceration that include requirements of reparation, victim compensation, community service or all of these.

Id. § 40-35-103(2) - (6) (2006).

Graham argues that the trial court erred in determining that the enhancement factor that he abused a position of public trust outweighed all of the applicable mitigating factors in this case. However, the amended sentencing act "deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." Carter, 254 S.W.3d at 344 (citing 2005 Tenn. Pub. Acts ch. 353, §§ 8, 9). Because the mitigating and enhancement factors are now "merely advisory" under the amended sentencing act, a trial court's discretion in setting a sentence "has been broadened." Id. at 345. Upon review, we conclude that the trial court did not err in determining that Graham's abuse of a position of public trust outweighed the mitigating factors in this case.

Graham also contends that the trial court improperly applied the enhancement factor that the money involved in the theft was particularly great. See T.C.A. § 40-35-114(6). He contends that because the amount of the money in this case dictated the Class of the felony and the appropriate sentencing range, it should not have also been used as an enhancement factor in sentencing. We acknowledge that because "the punishment for theft is enhanced based upon the amount taken by the accused, use of this enhancement factor constitutes

double enhancement in violation of the statute." State v. Grissom, 956 S.W.2d 514, 518 (Tenn. Crim. App. 1997). Accordingly, we agree that the trial court erred in applying this enhancement factor.

Additionally, Graham argues that the trial court erred in refusing to grant some form of alternative sentencing. Tennessee Code Annotated section 40-35-102(6)(A) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D). A trial court should consider the following when determining whether there is "evidence to the contrary" indicating that an individual should not receive alternative sentencing:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C) (2006); see Ashby, 823 S.W.2d at 169.

We note that the trial court failed to consider the factors regarding confinement as outlined in Tennessee Code Annotated section 40-35-103(1)(A)-(C). However, it is undisputed that Graham did not have a long history of criminal conduct and that measures less restrictive than confinement had not frequently or recently been applied unsuccessfully to him. T.C.A. § 40-35-103(A), (C). Moreover, in order to rely on a need for deterrence under Code section 40-35-103(1)(B), "evidence in the record must support a need within the jurisdiction to deter individuals other than the appellant from committing similar crimes." State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). The record shows that no such evidence was presented at Graham's sentencing hearing. Additionally, in order to deny an alternative sentence based on the seriousness of the offense pursuant to Code section 40-35-103(1)(B), the circumstances of the offense must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree[.]" State v. Bottoms, 87 S.W.3d 95, 103 (Tenn. Crim. App. 2001) (citations and internal quotations marks omitted); State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App.

1991); State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981). Although the State argues that the trial court implicitly found that the seriousness of the offense required a denial of alternative sentencing in this case, we conclude that Graham's offense was not so reprehensible as to preclude all forms of alternative sentencing. Given the circumstances of this particular case, we conclude that the trial court erred in failing to impose a sentence of split confinement. Although the trial court properly denied judicial diversion, full probation, and a community corrections sentence, we reverse the judgment and remand the case with instructions to the trial court to enter an order sentencing Graham to serve 90 days' confinement in the Hawkins County Jail before serving the remainder of his three-year sentence on supervised probation.

Graham also contends that the trial court erred in refusing to grant him a sentence of full probation. We note that the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Where a defendant is considered a favorable candidate for alternative sentencing, the State has the burden of presenting evidence to the contrary. State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995), overruled on other grounds by Hooper, 29 S.W.3d at 9. However, the defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. Id. (citing T.C.A. § 40-35-303(b)).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. T.C.A. § 40-35-303(a) (2006). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants. Id. § 40-35-303(b) (2006). However, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, his present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-

103(2), (4) (2006). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5).

Although Graham was eligible for probation, he failed to carry his burden of establishing his suitability for full probation. Specifically, he failed to prove that a grant of full probation would serve the ends of justice and the best interests of both the public and the defendant. Although he argues that his own interests as well as the ends of justice and the interests of society would be served by a grant of probation, we disagree. Here, the trial court properly determined that an alternative sentence would not serve the ends of justice or the interests of the public. It stated that the public has a vested interest in ensuring that individuals who serve in a public capacity, as Graham did in his deputy clerk position, will conduct themselves honestly during the course of their employment and will be justly punished if they fail to do so. The trial court also considered whether an alternative sentence would best serve Graham's interests. In the end, the court found that a sentence of confinement would serve Graham's interests because it would hold him accountable for his actions. Although it is questionable whether a sentence of confinement would serve Graham's best interests, it is clear that a sentence of full probation would not serve the ends of justice or the best interests of the public. Accordingly, the trial court's denial of full probation was proper.

Finally, Graham argues that the trial court erred in refusing to grant him a community corrections sentence, which would have enabled him "to stay in the community" and to "remain closely connected to his wife and children[.]" The intent of the Community Corrections Act was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders." Id. § 40-36-103(1) (2006). Eligible offenders under the Community Corrections Act include:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(F) Persons who do not demonstrate a pattern of committing violent offenses; and

(2) Persons who are sentenced to incarceration or are on escape at the time of consideration will not be eligible for punishment in the community.

Id. § 40-36-106(a)(1)(A)-(F), (2) (2006). Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right." State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)). Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." T.C.A. § 40-36-106(d) (2006). Although Graham met the minimum requirements of the Community Corrections Act, we conclude that the trial court properly denied a community corrections sentence based on the circumstances of the offense, including Graham's abuse of a position of public trust, the need for deterrence, and the best interests of the public.

## CONCLUSION

We conclude that the trial court erred in denying a sentence of split confinement. Although the trial court properly denied judicial diversion, full probation, and a community corrections sentence, we reverse the judgment and remand the case with instructions to the trial court to enter an order sentencing Graham to serve 90 days' confinement in the Hawkins County Jail before serving the remainder of his three-year sentence on supervised probation.

_____
CAMILLE R. McMULLEN, JUDGE

-17-